UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

KATHARINE MAUPIN,          :        Case No. 1:07-cv-74
                               :
      Plaintiff,             :        Weber , J.
                               :        Black, M.J.
vs.                         :
                               :
COMMISSIONER OF          :
SOCIAL SECURITY,          :
                               :
      Defendant.           :

**REPORT AND RECOMMENDATION[1] THAT:  (1) THE ALJ'S NON-DISABILITY DETERMINATION BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF; AND (3) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal.  At issue is whether the administrative law judge ("ALJ") erred in finding plaintiff no longer disabled due to medical improvement and therefore unentitled to child's Supplemental Security Income ("SSI").  (*See* Administrative Transcript ("Tr.") 17-23) (ALJ's decision).)

**I.**

On August 19, 1999, plaintiff filed an application for SSI.  (Tr. 91-93).  Thereafter, on October 5, 1999, plaintiff was found disabled as a child with an onset date of August 1, 1999.  On March 1, 2003, she was found no longer disabled due to medical improvement, and her benefits ceased.  Plaintiff's mother, Robin Maupin, appealed this action through

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

the initial and reconsideration phases.  Ms. Maupin then requested a hearing before an

ALJ.

On March 16, 2005, Ms. Maupin and plaintiff attended a hearing before ALJ

Samuel Rodner, after which the ALJ issued his unfavorable decision on September 29,

2005.  Subsequent to the ALJ's decision, Ms. Maupin obtained counsel and a request for

review was filed with the Appeals Council.  (Tr. 13.)  The Appeals Council denied the

appeal.  (Tr. 11-12.)

The ALJ's "Findings" – which represent the rationale of his decision -- were as

follows:

1.     The claimant was found disabled within the meaning of the Social
       Security Act beginning August 1, 1999.

2.     The impairment present as of October 2, 1999, the time of the most recent
       favorable medical decision that the claimant was disabled, the CPD, was
       lipomenginocele with tethered cord.  That impairment met the requirements
       of the listing at Section 111.08B in Appendix 1, Subpart P, of Regulations
       No. 4.

3.     The evidence establishes that there has been medical improvement in the
       claimant's impairment since the CPD and that it no longer meets the listing
       at Section 111.08B.

4.     The claimant's current impairments are spina bifida with tethered cord and
       neurogenic bladder.  Although these are severe impairments within the
       meaning of the Social Security Act, they do not meet or medically equal the
       criteria of any listed impairment in Appendix 1, Subpart P, Regulations NO.
       4, nor do they functionally equal the severity of the listing.

5.     The claimant's current impairments cause no limitation in Acquiring and
       Using Information, Attending and Completing Tasks, Interacting and
       Relating with Others, and Caring for Yourself.  She has a less than marked
       limitation in Moving About and Manipulating Objects and a marked

limitation in Health and Physical Well-being.

6.    The claimant's impairments do not functionally equal the severity of the listings as they do not cause "marked" limitation in two domains of functioning or an "extreme" limitation in one.

7.    The testimony of the claimant and her mother was generally credible, but not to the extent of showing marked and severe functional limitations or any disabling impairment.

8.    Because the claimant's impairments do not meet, medically equal, or functionally equal the listings, she does not have an impairment, or combination of impairments, that results in "marked and severe functional limitations."

9.    The claimant is no longer disabled as defined in the Social Security Act. Her disability ceased on March 1, 2003.

(Tr. 22 - 23.)

The ALJ thus concluded that plaintiff was no longer disabled due to medical improvement and therefore unentitled to SSI.  (Tr. 23.)

On appeal, plaintiff argues that: (1) the ALJ erred in finding significant medical improvement; (2) the ALJ erred in finding that plaintiff's impairments did not functionally equal the Listings; and (3) the ALJ erred in finding that plaintiff did not meet or equal Listing 111.08(B).  The undersigned agrees, and for the reasons that follow, finds that the ALJ's non-disability determination is not supported by substantial evidence.

-3-

## II.

The process and standards for determining whether a child is disabled for Social Security purposes are straightforward.

In determining whether a child is disabled for Social Security purposes, an ALJ uses a three-step sequential benefits analysis.  At Step 1, the ALJ asks if the child is performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the child's impairments are "severe"; at Step 3, the proceeding at issue herein, the ALJ analyzes whether the child's impairments, singly or in combination, meet, medically equal, or functionally equal a listing in the Listing of Impairments.  *See* 20 C.F.R. § 416.924(a).  The child's impairments must cause "marked and severe functional limitations" and have "lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.906.

In determining whether a child's impairment functionally equals a listed disability, the ALJ considers all of the child's activities and examines how well the child functions in terms of six functional domains.  20 C.F.R. § 416.926a(b).  These six domains relate to the child's abilities (1) to acquire and use information; (2) to attend and complete tasks; (3) to interact and relate with others; (4) to move about and manipulate objects; and (5) to care for herself; and (6) the child's health and physical well-being.  *Id.*

An impairment functionally equals a listing if the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).

A "marked" limitation interferes "seriously" with the child's ability to

-4-

independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

An "extreme" limitation interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

How well a child can initiate, sustain, and complete activities depends in part on the amount of supervision, extra help, and even the medications that the child receives that enable her to participate in the activities. 20 C.F.R. § 216.924a(b)(5)(ii).

Pursuant to these standards, the Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).

If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).[2]

## STANDARD FOR CONTINUING DISABILITY DETERMINATIONS

---

[3] As the Sixth Circuit has explained: "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm." *Id.*

The Social Security Administration has adopted a three-step sequential evaluation for periodic determinations of whether a child's disability continues.

First, the SSA must determine if there has been any "medical improvement" in the child's condition.  Medical improvement is "any decrease in the medical severity of the claimant's impairments which was present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled ... based on changes (improvements) in the symptoms, signs, or laboratory findings associated with the claimant's impairments."

Second, the SSA determines whether, despite improvement, the impairment still meets or equals the severity of the listed impairment it met at the time of the most recent favorable decision that the Plaintiff was disabled.  If the impairment does, the child's disability will be found to continue.  If the impairment does not, the SSA will proceed to step three.

In step three, the SSA must determine whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children.  20 C.F.R. § 416.994a(b); SSR 05-03p.

**III.**

As noted above, an impairment functionally equals a listing if the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  A "marked" limitation interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §

-6-

416.926a(e)(2).

Here, upon consideration of the record as a whole, the undersigned finds that the ALJ's non-disability determination due to medical improvement is not supported by substantial evidence.  Substantial evidence that plaintiff has "marked" limitation in the functioning domain of *moving about and manipulating objects* establishes that plaintiff's disability continues for Social Security purposes.[3]  *See* 20 C.F.R. § 416.926a(d).

Evaluating the functional domain of "moving about and manipulating objects" requires an analysis of how well the child moves her body from one place to another and how well she is able to move and manipulate things, *i.e.*, gross and fine motor skills.  As noted by the Social Security Regulations, in this domain, we consider how you move your body from one place to another and how you move and manipulate things.  These are called gross and fine motor skills, and generally involve:

> Moving your body involves several different kinds of actions: Rolling your body; rising or pulling yourself from a sitting to a standing position; pushing yourself up; raising your head, arms, and legs, and twisting your hands and feet; balancing your weight on your legs and feet; shifting your weight while sitting or standing; transferring yourself from one surface to another; lowering yourself to or toward the floor as when bending, kneeling, stooping, or crouching; moving yourself forward and backward in space as when crawling, walking, or running, and negotiating different terrains (e.g., curbs, steps, and hills).

20 C.F.R. § 416.926a.

Here, at Step One of the sequential evaluation, the ALJ determined that there had

---

[3]  The ALJ also found that plaintiff has a marked limitation in the functional domain of *Health and Physical Well-Being.*  (Tr. 21-22).  Thus, plaintiff functionally equals the Listing requirements because she has "marked" limitations in two of the domains.

been medical improvement in plaintiff's condition. (Tr. 20).  At Step Two, the ALJ

determined that plaintiff's impairments do not functionally equal the listings because they

do not cause at least two "marked" limitations or one "extreme" limitation in the six

domains used to evaluate what a child can or cannot do.

Specifically, in the domain of *moving about and manipulating objects*, the ALJ

found that plaintiff had a "less than marked" limitation noting that her gait is normal, she

has normal motor strength and sensation in her lower extremities, and she is able to do all

activities of daily living.  (Tr. 21.).  The ALJ further noted she was able to participate in a

field trip to a museum in April 2005.  (*Id.*)

Thus, at Step Three, the ALJ concluded that plaintiff is not currently disabled

under the rules for determining eligibility in initial disability claims for children. 20C.F.R.

§ 416.994a(b); SSR 05-03p.  (Tr. 22)

However, upon careful review, the undersigned finds that the record evidence is

overwhelmingly supportive of plaintiff's "marked" limitation in the domain of *moving

about and manipulating objects* during the relevant time period.

As the record reflects:

In March 2002, plaintiff underwent her third tethered spinal cord release surgery

(Tr. 207.)  As noted by the ALJ, since the surgery plaintiff has reported increased pain in

her back and legs.

Treatment notes from the Spina Bifida Clinic at Children's Hospital in August

2002 indicate that plaintiff has extremely tight hamstrings and relatively tight heel cords.

(Tr. 332.). Plaintiff also reported sharp pain in her heels after walking. (Tr. 330)

In January of 2003, plaintiff presented to Children's Hospital with intermittent complaints of back pain increasing daily since November of 2002. She described her pain as continuous bilaterally in her groin and lateral to her spine in the thoracolumbar regions with almost monthly urinary tract infections. On exam, she exhibited stinging pain on palpation in the small of her back and lumbosacral area. She was diagnosed with ongoing and chronic back and inguinal pain and advised to follow-up with physical therapy (Tr. 335-336).

Plaintiff was evaluated by Dr. Crone in November of 2003 for her symptoms of persistent low back pain located in the lower lumbosacral region in the paraspinal region, occasionally severe enough to interfere with all activities. Dr. Crone noted that, despite conservative measures, plaintiff's low back pain had not improved. She recommended that plaintiff undergo an evaluation by the pain management team at Children's Hospital for some assistance with the management of her chronic pain problem. (Tr. 344).

Subsequently, plaintiff presented to Dr. Goldschneider for a pain management evaluation in June of 2003, at which time he noted very tight hamstrings and mildly tight heel cords. He diagnosed her as suffering from bilateral leg pain with elements of both musculoskeletal and neuropathic etiology. She was given a TENS unit. (Tr. 431). He started her on Baclofen and added Neurontin after plaintiff experienced little improvement in her pain. (Tr. 448). She was also started on Daypro with little relief. (Tr. 460). A letter submitted by plaintiff's mother post-hearing also evidences that plaintiff has been prescribed Oxycontin (Tr. 517).

On August 31, 2004, plaintiff presented to Dr. Goldschneider at the Pain Management Clinic with increasing back pain over the course of the summer. He noted the pain is located in her groin bilaterally and down the backs of her legs, and also in her low back. (Tr. 480). He further "the pain is exacerbated by activities as well as standing and walking," and [s]he consequently had a fairly inactive summer." *Id.*

In a letter to the ALJ, plaintiff's mother stated that plaintiff had left regular school and begun home schooling because of the physical demands of getting from one class to another. (Tr. 369).

Moreover, treatment notes from a February 2005 follow-up visit indicate that beginning in December plaintiff reported having increased lower back pain and a beginning of groin pain despite changes in medication and that her "activities have significantly been affected in that she has not gone to school since December." (Tr. 491)

Additionally, Dr. Ho, a psychologist at the Pain Clinic, evaluated plaintiff on April 20, 2005, and found that plaintiff reported that physical activity exacerbates her pain, that she rarely has in-person contact with other children, and that she avoids physical activity due to fear of exacerbating her pain. (Tr. 520).

Based on the foregoing, the undersigned finds that plaintiff's leg and back pain interferes "seriously" with the plaintiff's ability to independently initiate, sustain, or complete activities, and, therefore, the ALJ's conclusion that plaintiff does not have a "marked" limitation is not supported by the evidence of record.

## IV.

The Court has authority to affirm, modify, or reverse the Commissioner's decision

"with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 111 S. Ct. 2157, 2163 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176. *See also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Thus, based on the undersigned's determination that the present record lacks substantial evidence to support the ALJ's finding that plaintiff's impairments did not functionally equal the listings, benefits should be awarded immediately, without requiring a remand. As noted above, an impairment functionally equals a listing if the child has "marked" limitations in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). Here, plaintiff has marked limitations in two of the domains, moving about and manipulating objects, and health and physical well-being, and, therefore, plaintiff continues to meet the disability requirements as set for in the Social Security Regulations. *See* 20 C.F.R. § 416.926a(d).

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be found **NOT SUPPORTED BY**

**SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to

the ALJ for an immediate reinstatement of benefits, including retroactive payments; and,

as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:  February 19, 2008               s/Timothy S. Black
                                       Timothy S. Black
                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHARINE MAUPIN,                    :         Case No. 1:07-cv-74
                                     :
          Plaintiff,                 :         Weber , J.
                                     :         Black, M.J.
vs.                                  :
                                     :
COMMISSIONER OF                      :
SOCIAL SECURITY,                     :
                                     :
          Defendant.                 :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).